UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| BRIAN ANNORENO  Plaintiff, v. SHERIFF OF KANKAKEE COUNTY, et al., Defendants. | Case No. 10-CV-2088 |

**OPINION**

This case is before the court for ruling on the Motion for Summary Judgment (#29) filed by the Defendants, Sheriff of Kankakee County ("Sheriff"), Thomas Dorries ("Dorries"), Tina Carpintero ("Carpintero") and Amanda Voss ("Voss"). This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, Defendants' Motion for Summary Judgment (#29) is GRANTED.

**FACTS[1]**

On January 13, 2006, Plaintiff Brian Annoreno, a federal pretrial detainee, was transferred to the custody of the Office of the Sheriff of Kankakee County ("Kankakee County Sheriff"). Plaintiff continued to be in the custody of the Kankakee County Sheriff during April 2008, and was housed at the Jerome Combs Detention Center ("JCDC"). Late in the evening of

---

[1] This statement of facts is based upon the parties' Statements of Undisputed Facts and the documents submitted by the parties. This court has only included facts which are adequately supported by evidence in the record.

-1-

April 18, 2008, or early in the morning of April 19, 2008, Plaintiff was involved in an incident with correctional officers at JCDC: Defendants Dorries and Carpintero. Following the incident, on April 21, 2008, Plaintiff submitted a Sick Call Slip requesting to see a nurse.[2] In this Sick Call Slip, Plaintiff described his request for sick call as follows: "I need to see you. I got assaulted by Officer [Dorries and] tazed by Officer [Carpintero.] My body is sore from head to toe and I have bruises all over my body and I have a sprained ankle from it. Also my good eye is messed up from Officer [Dorries] hitting me[.] This all happened on Friday night 4/18/2008. Also my bad eye is very sore[.]"

The JCDC inmate handbook explicitly provides that the grievance procedure in Kankakee County requires that an inmate submit a grievance written on an Inmate Grievance Form regarding complaints about the conditions of the jail. After receipt of an Inmate Grievance Form by a JCDC staff member, the Inmate Grievance Form is forwarded on to administrative staff. Specifically, Michael Downey, the Chief of Corrections of Kankakee County, is responsible for handling all inmate grievances. Alternatively, Sick Call Slips are not accepted as part of the grievance procedure because they are submitted directly to the medical department and are not forwarded to administrative staff. Although Plaintiff was aware that grievance forms were used in Kankakee County, and in fact filed several grievance forms between his arrival at JCDC and the time of the incident, Plaintiff never submitted an Inmate Grievance Form to the administration regarding the incident which occurred on either April 18 or 19, 2008.

---

[2]This fact was not included by the Plaintiff in his Response to the motion for summary judgment, as required by the Local Rules. In fact, Plaintiff only filed a Response to the Defendants' Statement of Undisputed Material Facts, failing to offer any additional material facts. The source for the information relating to the Sick Call Slip is the copy of the slip Plaintiff attached to his Response (#30).

**PROCEDURAL HISTORY**

On April 16, 2010, Plaintiff filed a Complaint (#1) under 42 U.S.C. § 1983. On June 17, 2010, Defendants filed an Answer (#9) and alleged an affirmative defense of qualified immunity to the Plaintiff's Complaint. On September 9, 2010, Defendants filed a Motion for Leave to File an Amended Answer and Affirmative Defenses (#13), which was granted by Magistrate Judge David G. Bernthal on September 10, 2010. On September 10, 2010, Defendants filed an Amended Answer (#14) which contained an additional affirmative defense, which argued that the Plaintiff's claim was barred by the Prisoner Litigation Reform Act ("PLRA") because the Plaintiff failed to exhaust the grievance procedure made available to him at the JCDC prior to filing this lawsuit. On March 1, 2011, Plaintiff filed a Second Amended Complaint (#19), which simply elaborated on the injuries Plaintiff alleges he suffered as a result of the incident in question.

On July 6, 2011, Defendants filed a Motion for Summary Judgment (#29), arguing that summary judgment was appropriate on Plaintiff's claims because the Plaintiff failed to exhaust administrative remedies available to him prior to filing this lawsuit as required under the PLRA. On August 1, 2011, Plaintiff filed a Response (#30, #31), arguing that Plaintiff's filing of a Sick Call Slip should be treated as initiating a grievance.[3] On August 10, 2011, Defendants filed a Reply (#32).

---

[3]However, Plaintiff failed to include the required sections of undisputed and disputed facts in this Response. The only disputed facts identified by the Plaintiff are the following: (1) the actual date of the accident; (2) the proper recipients of Inmate Grievance Forms; and (3) whether Plaintiff received an inmate handbook when he was booked into the JCDC.

## ANALYSIS

## I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Perkin Cmty. High Sch. Dist. 303, 158 F.3d 917, 929 (C.D. Ill. 2002). Speculation, however, is not the source of a reasonable inference. See Burwell, 213 F. Supp. 2d at 929, citing Chmiel v. JC Penney Life Ins. Co., 158 F.3d 966, 968 (7th Cir. 1998).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. Of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleadings, but by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(c). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient

showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23. "Conclusory allegations not supported by the record are not enough to withstand summary judgment." Basith v. Cook County, 241 F.3d 919, 928 (7th Cir. 2001).

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This aspect of the PLRA seeks to provide correctional officials time and an opportunity to address complaints internally before allowing the initiation of a federal lawsuit. Woodford v. Ngo, 548 U.S. 81, 93 (2006). The exhaustion requirement serves two main objectives, specifically: (1) the prison is allowed to correct its own mistakes before being haled into court; and (2) the claim may be resolved much more quickly and economically. Id. at 89. The requirement of exhaustion is not left to the discretion of the district court—rather it is mandatory. Id. at 85. The inmate must first exhaust all administrative remedies prior to filing suit even if the requested relief, such as monetary damages, is beyond the power of the administrative review board or if the prisoner believes that exhaustion will be futile. Dole v. Chandler, 438 F.3d 804, 808-09 (7th Cir. 2006) (citations omitted). To exhaust administrative remedies, an inmate "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Moreover, the Seventh Circuit has made it clear that a strict compliance approach must be used when considering whether a prisoner has properly used the prison's grievance process to exhaust administrative remedies. Dole, 438 F.3d at 809 (emphasizing that a "prisoner must properly use

the prison's grievance process).

The only issue for the court in this motion for summary judgment, which is dispositive in this case, is whether the Plaintiff exhausted his available administrative remedies. There is no dispute, and Plaintiff affirmatively acknowledges, the following facts: (1) the JCDC grievance procedure requires that inmates, if complaining about jail conditions, submit a written complaint on an Inmate Grievance Form; (2) JCDC does not accept Sick Call Slips as part of the grievance procedure because only medical personnel receive such forms; (3) Plaintiff was aware that grievance forms were used in Kankakee County, and had previously submitted completed Inmate Grievance Forms; and (4) Plaintiff did not file an Inmate Grievance Form at any time regarding the incident in question. Therefore, these undisputed facts clearly indicate that Plaintiff failed to follow the JCDC's administrative rules for inmate grievances.

Nevertheless, Plaintiff asks this court to deny the Defendants' Motion for Summary Judgment (#29) on the basis that Plaintiff's Sick Call Slip, which he filed on April 21, 2008, should be considered adequate to exhaust administrative remedies. The basis for this argument, Plaintiff explains in his Response (#30), is that he apparently was unaware of the correct procedures for filing a grievance and therefore assumed he could request medical attention and initiate a grievance with a single form. This argument, however, fails to raise a genuine issue of material fact for two reasons. First, Plaintiff has failed to offer any competent evidence to support this allegation that would justify denying a motion for summary judgment. See Butts, 387 F.3d at 924. Plaintiff's statement of material facts does not offer any fact even remotely

supporting this assertion. Moreover, this court, although it was not required to,[4] reviewed the Plaintiff's deposition testimony to determine if there was any basis for his assertion that he believed he could initiate a grievance with a single form. This court was unable to find any statement by the Plaintiff that he was confused as to the appropriate procedure and filed the Sick Call Slip believing he was also initiating a grievance. The only evidence before the court that could remotely support Plaintiff's allegation is Plaintiff's claim that he does not remember receiving a JCDC inmate handbook.[5] At most, this evidence, if viewed in the light most favorable to the Plaintiff, would support an inference that Plaintiff was unaware of the procedures for filing a grievance because he did not receive a handbook. However, this inference is not supported by the definite, competent evidence before this court. On the contrary, the undisputed material facts indicate that Plaintiff knew grievance forms were used in JCDC. Furthermore, Plaintiff himself filed multiple grievance forms prior to the incident in question, thereby demonstrating his ability to access the procedural mechanisms at JCDC for initiating grievances. Therefore, there is no evidence creating a genuine issue of material fact as to whether Plaintiff's failure to exhaust administrative remedies was the result of his lack of knowledge of the appropriate procedures to follow to initiate a grievance.

---

[4]The Seventh Circuit has explained the need for an appropriate factual statement in opposition to a motion for summary judgment as follows: "[t]hese statements are not merely superfluous abstracts of evidence . . . they are intended to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of the questions. They are . . . roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own." Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th Cir. 1994).

[5]Moreover, this testimony is contested by the Defendants, who offer the affidavit of Michael Downey, the Chief of Corrections, who states that JCDC records indicate that Plaintiff received an inmate handbook as part of the Male Standard Issue when he was booked into JCDC.

Second, and more importantly, there is no dispute that Plaintiff failed to follow the JCDC grievance procedure. Plaintiff acknowledges that Sick Call Slips are not accepted under the JCDC grievance procedures. Therefore, Plaintiff has failed to raise a genuine issue of material fact with regards to whether or not he strictly complied with the available grievance procedures at JCDC, even if this court assumed that Plaintiff's assertion—that he could request medical attention and initiate a grievance with his Sick Call Slip—was supported by competent evidence. Therefore, under the Seventh Circuit's strict compliance approach to exhaustion, summary judgment for the Defendants is mandatory due to Plaintiff's failure to properly comply with JCDC's grievance procedures. See Dole, 438 F.3d at 809.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for Summary Judgment (#29) is GRANTED. The clerk of the court is directed to enter judgment in favor of the Defendants and against the Plaintiff pursuant to Federal Rules of Civil Procedure 56. This case is terminated in its entirety. The parties are to bear their own costs.

(2) If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should set forth the issue the Plaintiff plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C). If the Plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the Plaintiff may also accumulate a strike under 28 U.S.C. § 1915(g).

ENTERED this 4th day of October, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE